## WILLIE BRANCH ET UX v. STANDARD TITLE COMPANY ET AL

5-5912                                      480 S.W. 2d 568

### Opinion delivered May 29, 1972

*Shelby R. Blackmon* and *U. A. Gentry,* for appellants.

*Wright, Lindsey & Jennings,* for appellees.

FRANK HOLT, Justice. This is an action to recover for the alleged negligent disbursement of escrow funds and to establish subrogation rights. Appellants contracted with Jim Hart for the construction of a residence at a total cost of $16,500. To assist in financing, appellants deeded their property to Hart who obtained a temporary loan for construction purposes from the Pine Bluff National Bank. The appellees were not involved in this loan. Subsequently, appellants applied to appellee-Modern American Mortgage Corporation for permanent financing on their residence and secured a $10,000 loan. This amount was paid to appellee-Standard Title Company with the instruction to disburse the funds after completion of the construction and upon a determination that appellants' mortgage to Modern American would constitute a first lien; and further, that a title insurance policy be issued to Modern American from appellee-Standard Title Insurance Company, which would indemnify it against any loss by virtue of any prior liens. Thereafter, appellee-Standard Title Company as escrow agent, with appellants' consent, deducted certain expenses from the principal amount and on November 22, 1968, issued a check for the balance of the loan, $9,037.88, to Hart and M. J. Probst, appellee-Standard Title Co.'s attorney. Probst, acting as agent for appellee-Standard Title Co., paid off the temporary loan at the Pine Bluff Bank. After obtaining an affidavit from Hart, the contractor, that he had paid for all materials and labor used in the construction of the house, Probst remitted the balance to Hart.

A month later, appellants received notice from a materialman, O. L. Puryear and Sons, Inc., that a bill for $2,472.06, representing material furnished in construction of appellants' house, was unpaid by their contractor.

Puryear filed a lien and reduced it to a judgment. Thereafter, appellants filed this action to recover for their payment of Puryear's judgment alleging that appellees, Standard Title Co. and Standard Title Ins. Co., were negligent in paying to the contractor, who absconded, the balance of the permanent loan proceeds without first ascertaining whether the Puryear material used in the construction of the residence was paid; and, further, that appellants were entitled to be subrogated to the rights of the appellee-mortgagee (Modern American Mortgage Corp.) under the terms of the title insurance policy issued to the mortgagee by appellee-Standard Title Ins. Co.

For reversal of an adverse decree, appellants first contend that the Chancellor erred in holding that appellee-Standard Title Co. was not negligent in disbursing the proceeds of the permanent loan; and also, in refusing to subrogate the appellants to the rights of Modern American (mortgagee) under its title insurance policy issued by appellee-Standard Title Ins. Co. since appellants had to pay the Puryear lien.

Appellant, Willie Branch, testified that he agreed to the payment of the money to Hart and Probst after conferring with a lawyer of his own choice on two separate occasions, "the last of August or the first of September" and in November. Appellant talked with this lawyer after receiving a statement from appellee-Standard Title Company listing certain disbursements or deductions. He testified on cross-examination, "I went to him to ask information on whether if there was any liens, and debts was owed on the property by the contractor [Hart], who would be liable and how we would go about seeing it was paid. It was when I carried the papers to show him, after he brought them down. Yes, that was November 22. The same day I signed them." On that date, appellant and his wife signed a letter addressed to appellee-Standard Title Company authorizing and directing that the net loan proceeds in its possession as escrow agent be paid by check jointly to Hart and M. J. Probst. Accordingly, a check for $9,037.88 was forwarded to them.

Prior to appellants' (both Branch and his wife) consultations with an attorney, he had been informed by Puryear during August that the cost of materials used in the construction of the residence had not been paid. Appellant testified: "Well, he told me he had furnished some material out there and he had not been paid. Yes sir, and several others had done the same." Appellant further testified that in October he had personally paid Hart $7,498.25 without first determining whether Puryear had at any time between August and October received payment for the materials used in the construction of the residence.

We prefer to rest out opinion upon appellees' assertion that appellants are estopped from asserting their claim. In *Rogers* v. *Hill*, 217 Ark. 619, 232 S.W. 2d 443 (1950), we aptly said:

"The doctrine of estoppel *in pais* was early recognized in decisions of this court and is available as a defense to a claimed right either at law or in equity. See *Gambill* v. *Wilson*, 211 Ark. 733, 202 S.W. 2d 185. In the recent case of *Williams* v. *Davis*, 211 Ark. 725, at page 731, 202 S.W. 2d 205, 208, we quoted with approval, this statement in *Jowers* v. *Phelphs*, 33 Ark. 465: 'Estoppels *in pais* depend upon facts, which are rarely in any two cases precisely the same. The principle upon which they are applied is clear and well defined. A party who by his acts, declarations, or admissions, or by failure to act or speak under circumstances where he should do so, either designedly, or with willful disregard of the interests of others, induces or misleads another to conduct or dealings which he would not have entered upon but for this misleading influence, will not be allowed, afterwards, to come in and assert his right, to the detriment of the person so misled.' "

As we view the evidence, Branch paid $7,498.25 in cash to his contractor (Hart) and a month later authorized and directed appellee-Standard Title Company, the escrow agent, to pay the net proceeds of the $10,000 loan direct to Hart and Probst with the admitted knowledge

of the possible outstanding material bill owed to Puryear without apprising them of his knowledge. These acts and knowledge are inconsistent with the right presently asserted by appellants and are detrimental to appellees.

As to the appellants' claim for subrogation, we further observe that appellee-Standard Title Ins. Co.'s duty under the insurance policy was contractual in nature and extended only to the mortgagee. Also, the appellants, as owners of the property, had the primary (and not a secondary) responsibility to discharge the Puryear encumbrance or lien upon their property. Ark. Stat. Annot. § 51-601 (Repl. 1971). The doctrine of subrogation cannot be invoked by appellants in the case at bar.

It follows that it is unnecessary to discuss appellants' contention that they are entitled to recover their expenses which were incurred in defending the Puryear claim for a lien.

Affirmed.